Gen. 155]                                                              155

**ELECTIONS**

**FAIR ELECTION PRACTICES ACT — EXPENDITURE OF CAMPAIGN FUNDS FOR CRIMINAL DEFENSE LEGAL FEES**

October 19, 1993

*The Honorable Julian L. Lapides*
*Maryland Senate*

*The Honorable Tony E. Fulton*
*The Honorable Kenneth C. Montague*
*Maryland House of Delegates*

You have requested our opinion whether a Member of the General Assembly may use campaign funds to pay debts for legal fees incurred in the successful defense of a criminal prosecution relating to the official's campaign.

For the reasons set forth below, we conclude that, although a Member of the General Assembly or other elected official may not use campaign funds for personal use or for office-related expenses – and, specifically, may not ordinarily use campaign funds for the cost of defending against criminal charges – an official may use campaign funds to pay debts incurred in the defense of a criminal prosecution directly related to alleged campaign improprieties.

**I**

**Background**

As we understand the facts, in late 1990 the State Prosecutor began an investigation largely related to the conduct of Delegate Tony E. Fulton's 1990 campaign for re-election to the House of Delegates. In the fall of 1991, a criminal information was filed alleging that Delegate Fulton had diverted legislative funds for campaign purposes and had violated campaign laws. A jury ultimately found Fulton innocent on all charges.

Initially Delegate Fulton sought to raise money separately to pay for the costs of his defense. Eventually, however, he asked about the legality of using campaign funds for this purpose. In a letter of advice to the Co-Chairmen of the Joint Committee on Legislative Ethics dated January 8, 1993, Assistant Attorney General Jack Schwartz, Chief Counsel for Opinions & Advice, expressed the view that this use of campaign funds was not prohibited by the Fair Election Practices Act, Subtitle 26 of Article 33 of the Maryland Code. This opinion confirms that conclusion and elaborates the reasoning underlying it.

## II

### Definition and Interpretation of "Expenditure"

Article 33, §1-1(a)(7) defines "expenditure," in pertinent part, as "any ... disbursement ... by any candidate, treasurer, or other agent of such candidate, ... to ... [p]romote ... the success or defeat of any candidate ...." A "contribution" is defined in largely the same terms: "the gift [or] transfer ... of money or other thing of value to any candidate ... to promote ... the success or defeat of any candidate ...." §1-1(a)(5)(i).[1]

This office has recognized the breadth of the definition of "expenditure" and the range of techniques that can reasonably be said to promote a candidacy. In 68 *Opinions of the Attorney General* 252 (1983), for example, Attorney General Sachs was asked whether campaign contributions may be used for newsletters. Noting the open-ended character of the definition of expenditure, "an expenditure of campaign contributions for an electoral newsletter is certainly proper. Such use of contributed funds would surely be within the contemplation of most contributors." 68 *Opinions of the Attorney General* at 267. The Attorney General cautioned, however, that the use of campaign contributions for a constituent newsletter (that is, a newsletter sent by an incumbent Member of the General Assembly to the residents of his or her district) "is quite another matter." Specifically, the opinion observed:

---

[1] Unless otherwise indicated, all statutory references are to Article 33 of the Maryland Code.

> The very definition of "contribution" implies that the donor intend his or her gift to be used for electoral purposes ....
>
> By contrast, if the donor is told that the gift will be used solely for a constituent newsletter − a nonelectoral use − there is no basis on which one can simply assume that the donor intends "to promote ... any candidate" with the gift.

68 *Opinions of the Attorney General* at 264. Thus, the opinion concluded, "the use of campaign contributions for a constituent newsletter is not ... a proper 'expenditure.'" 68 *Opinions of the Attorney General* at 267. To generalize that point, campaign contributions may not properly be expanded for purposes related to the job of the official, rather than the official's electoral endeavors.

This office has also suggested that campaign contributions may not be used for the personal benefit of the candidate. In 70 *Opinions of the Attorney General* 96 (1985), the Attorney General was of the opinion that those who hold a testimonial dinner for an incumbent must make clear to ticket buyers whether the proceeds are intended to be used for as a personal gift or for electoral purposes. Furthermore, proceeds of a testimonial dinner must be used in a way consistent with the purposes of the contributors. Funds intended for electoral purposes, therefore, are not to be used for the kind of personal gift that would be permissible if the event were "a true testimonial." 70 *Opinions of the Attorney General* at 105.

This position − that campaign contributions may not be used for the personal benefit of the candidate − has been bolstered by a recent Court of Appeals decision. In *State v. Cicoria*, 332 Md. 21, 629 A.2d 742 (1993), an official was charged with theft of funds from his authorized campaign committee. Cicoria argued in part that his personal use of campaign funds was a permissible "expenditure," because the beneficial effect on him of enjoying the use of these funds promoted his candidacy. The Court of Appeals, though finding it unnecessary to address this contention directly, did observe as follows:

> It is far from clear that the use to which Cicoria put the funds ... was for a valid purpose. Certainly we do not subscribe to the view urged by Cicoria, that any use that a candidate makes of campaign funds is valid because any purpose for which the candidate spends those funds furthers and promotes, in some sense, that candidate's campaign.

732 Md. at 41 n.18.

To summarize, based on this office's prior opinions and the dictum in *Cicoria*, we can say that campaign funds may *not* be used for either personal or office-related expenses.[2] Given the breadth of the definition of "expenditure," however, it is difficult to state more affirmatively a precise description of the permissible uses of campaign funds. A useful test was set out in a 1983 advice letter from Attorney General Sachs, a test subsequently endorsed in published opinions:

> In the absence of any other directive from the legislature, it is our view that *any lawful expense*, that is, an expense not prohibited by some other provision of State or federal law or Constitution, *which enhances a candidate's election chances and would not be incurred if there were no potential candidacy, is a proper expenditure* so long as the expense is reported in accordance with the requirements of the Election Code. Thus monies used to promote a candidacy – even if not expended immediately

---

[2] Federal law, by contrast, allows the use of campaign contributions "to defray any ordinary and necessary expenses incurred in connection with [an incumbent's] duties as a holder of Federal office." 2 U.S.C. §439a; 11 C.F.R. §113.2(a). Indeed, federal law once permitted congressmen to convert excess campaign funds to personal use. *See Federal Election Comm'n v. Gus Savage For Congress '82 Committee*, 606 F. Supp. 541, 547 n.10 (N.D. Ill. 1985). *See also United States v. Pisani*, 773 F.2d 397 (2d Cir. 1985) (New York law at the time did not prohibit personal conversion of campaign funds). Current federal law prohibits conversion of campaign funds to personal use. 2 U.S.C. §439a; 11 C.F.R. §113.2(d).

> prior to an election – whether for staff, salary, equipment, supplies, postage, receptions, newsletters, etc. constitute proper expenditures under the State Election Code so long as they are reported.

Letter from Attorney General Sachs to Senator Dennis F. Rasmussen at 3 (April 27, 1983) (emphasis added), *quoted in* 68 *Opinions of the Attorney General* at 267 and 70 *Opinions of the Attorney General* at 101.[3]

This letter focuses on the nexus between an outlay and a "potential candidacy," for those were the facts presented. But a similar test governs outlays made after a campaign − would the expense have been incurred had there been no candidacy? For example, a successful candidate may use campaign funds to pay someone to prepare campaign finance reports due after the election. And, of course, the candidate may use campaign funds to pay campaign-related debts incurred prior to the election. Such post-election expenditures "promote the success of the candidate," in the sense that they meet obligations that arose directly from the candidacy and that, if not satisfied, would hurt the candidate's future prospects.[4] Another example of a permissible post-election expenditure is a "thank you" party. A candidate is permitted to organize a party for campaign supporters and to use campaign funds for that purpose, to build good-will for the next election. Post-election outlays of this kind satisfy the "but for" test for proper expenditures − but for the candidacy, they would not have been incurred.

---

[3] The letter's emphasis on reporting reflects not only the requirements of the Election Code but also the realistic sense that a candidate is unlikely to make expenditures that would risk an uproar when later subject to scrutiny by contributors, members of the press, and political opponents. In other words, the reporting requirement itself makes questionable expenditures less likely and lessens the need for a detailed and potentially overly rigid set of restrictions in the law.

[4] Indeed, in the case of required reports, the failure to file might result in a bar to taking office or to receiving the salary of the office. §26-13(e) and (f).

The same is true of Delegate Fulton's legal expenses. Delegate Fulton was defending against charges that arose as a result of alleged violations of the campaign laws. Were it not for his candidacy, he would not have incurred the legal expenses.[5] That he incurred the expenses after the election should not affect the legality of the expenditure. A conviction on charges of campaign law violations, moreover, might have an especially negative effect on the willingness of voters to provide contributions or other support in a future campaign.

A hypothetical underscores the point. Under §26-21, the Secretary of State is authorized to "seek an immediate injunction against any violation" of the Fair Election Practices Act. If the Secretary filed such an injunction action against a candidate, no one would doubt that the candidate could permissibly use campaign funds for legal expenses in defending the action. We do not see why a substantially identical use of campaign funds becomes impermissible merely because the legal expenses relate to criminal charges brought by a prosecutor after the election rather than civil charges brought by the Secretary of State before the election.

## V

### Conclusion

In summary, it is in our opinion that a candidate or elected official may use campaign funds to pay debts incurred in the defense of a criminal prosecution only if there is a direct connection between the candidacy and the prosecution. This "nexus" requirement was

---

[5] We do not suggest that campaign funds may generally be used for the cost of defending against criminal charges. If, for example, a candidate or incumbent is indicted for armed robbery, he or she may not use campaign funds to defend against the charge. While in one sense it would undoubtedly promote the success of the candidacy to be acquitted of the robbery charge, and in the case of an incumbent acquittal would protect his or her incumbency, there is no nexus between the charge of armed robbery and the candidacy.

met with regard to Delegate Fulton's use of campaign funds for this purpose.

> J. Joseph Curran, Jr.
> *Attorney General*
>
> Jack Schwartz
> *Chief Counsel*
>   *Opinions & Advice*
>
> Kimberly Smith Ward
> *Assistant Attorney General*